[Civ. No. 15992.   First Dist., Div. One.   June 30, 1954.]

CARL C. BERENDSEN, as Executor, etc., Respondent, v. DAWN McIVER, as Administratrix, etc., Appellant.

348

Harrison W. Call for Appellant.

Tinning & DeLap, Dana Murdock and J. Vance Porlier for Respondent.

BRAY, J.—In an action to reform a deed and to quiet title, defendant appeals from a judgment in favor of plaintiff.

## QUESTIONS PRESENTED

1. Sufficiency of the evidence.
2. Sufficiency of complaint.
3. Is the action barred by section 338, subdivision 4, and section 353, Code of Civil Procedure?
4. Admission of oral testimony.
5. Was administrator incompetent to testify?

## FACTS

In 1945, Andrew P. Berendsen, who died June 13, 1948, and Hugh Alexander McIver, who died November 27, 1950, were business partners. In a deed delivered sometime in July, 1945, and recorded August 7, 1945, they were named as joint tenant grantees. The complaint alleged that the property was purchased by them as tenants in common, but that by mistake of the scrivener a "joint tenancy" form deed was used. The complaint seeks to have the deed reformed to one of tenancy in common. The instructions given by Berendsen and McIver to the title company which drew the deed, authorized the company to deliver all documents when title "to said property [is] vested of record in Hugh A. McIver, a married man, and Andrew P. Berendsen, a single man." There is no evidence of any instructions to the title company that the deed should be in joint tenancy. Both grantees were dead at the time of the trial. After Berendsen's death an undivided one-half interest in the property was listed in the inventory in his estate. McIver stated to the attorney for the estate that he would sell to the estate his one-half interest in the property for $4,500, or would sign a deed if the estate could sell the whole parcel for $1,000 per acre. Later McIver made a written offer to pay the estate

$5,000 for "a clear title to the land in said partnership of McIver & Berendsen." He deposited with the estate's attorney $500 on account of the offer. The half interest was appraised in the estate at $6,000. The offer was rejected as not being 90 per cent of the appraised value. McIver requested the executor of the Berendsen estate to sign with him a check drawn on the partnership account to pay taxes on the property. The executor did. In the McIver estate, appellant administratrix listed in the inventory an undivided one-half interest only in the property. Under the heading "Property Held in Joint Tenancy" were three other parcels, not including the property in question.

The real estate broker who handled the purchase transaction testified that McIver instructed him to the effect that he wanted the deed in joint tenancy of himself and partner. The broker received no instructions from Berendsen. McIver's daughter loaned McIver $2,300 for his share of the purchase price. She testified that her father told her the deed was in joint tenancy.

## 1. *Sufficiency of the Evidence.*

It is obvious from the foregoing recital that the parties treated the property as held in tenancy in common and not in joint tenancy, and that there was sufficient evidence together with the reasonable inferences therefrom to support the court's finding that the deed being in joint tenancy was due to the mistake of the scrivener.

The testimony of the real estate broker and McIver's daughter merely created a conflict in the evidence, which conflict the trial court resolved in favor of plaintiff. It should be noted in this behalf that McIver's own acts in treating the Berendsen estate as owning a half interest in the property are in themselves a refutation of the testimony of the broker and the daughter.

"In 45 American Jurisprudence, pages 618, 619, this is said: 'A mutual mistake of their agents is not necessarily a mistake of the parties. Undoubtedly, it would be . . . where the mistake was made by a scrivener who acted as common agent of both parties in drafting the instrument; . . . .'" (*Mills* v. *Schulba,* 95 Cal.App.2d 559, 562 [213 P.2d 408].)

The facts in this case are concisely summed up in the following statement of the trial judge, Honorable Norman A. Gregg, at the end of the trial: "Gentlemen, very frankly, I don't have any trouble with the facts of this thing. On the one side is the fact that this deed very obviously is in the

form of a joint tenancy deed, but it's inescapable to me that everybody considered to the contrary. It was listed in both estates. There was testimony that after Mr. Berendsen's death Mr. McIver went and asked the executor to draw a check to pay the taxes on it. Mrs. McIver in the inventory of her estate and in the divorce action stated they had a half interest in it.''

2. *Sufficiency of Complaint.*

The complaint is poorly drawn, but not fatally defective. No demurrer to it was filed. Defendant moved to dismiss and for judgment on the pleadings on the ground that the action was without merit and not brought in good faith, the alleged cause of action fictitious and a sham, that plaintiff was guilty of laches and the cause of action barred by the statute of limitations. The court denied the motion. Sections 581 to 583, Code of Civil Procedure, dealing with dismissals, do not provide for dismissal because of laches or the bar of the statute of limitations. ■ ''The bar of the statute of limitations to an action . . . should be set up by demurrer, or in an answer, and not by motion to dismiss.'' (*Everts* v. *Blaschko,* 17 Cal.App.2d 188, 190 [61 P.2d 776].)

■ The complaint alleges that the parties purchased the property as tenants in common and that the scrivener, in drawing the deed, by mistake, used a form deed entitled ''Joint Tenancy Deed''; that said deed conveyed title as joint tenants instead of tenants in common; that the mistake was not discovered during the lifetime of either Berendsen or McIver but was discovered ''by the parties hereto'' on June 29, 1951, and that after demand by plaintiff, defendant refused to rectify the error and claims to be the owner to the exclusion of plaintiff's right and title. While the complaint would not be sufficient against special demurrer had one been interposed, it sets forth facts sufficient to constitute a cause of action for reformation of the deed due to the scrivener's mistake in drawing it. ■ ''Appellants' attack on the amended complaint comes at a late date, for they did not demur. 'In the absence of a demurrer, great liberality has been indulged in order to sustain faulty complaints in actions to reform contracts' (*Auerbach* v. *Healy,* 174 Cal. 60, 63 [161 P. 1157]) and our only inquiry is whether the pleading is sufficient as against a general demurrer.'' (*Mills* v. *Schulba, supra,* 95 Cal. App.2d 559, 561.) The rule is the same as to motions for judgment on the pleadings. (See *Rannard* v. *Lockheed Air-*

*craft Corp.,* 26 Cal.2d 149 [157 P.2d 1].)  ■  "Our courts have repeatedly held that the mistake of a draftsman is a good ground for the reformation of an instrument which does not truly express the intention of the parties (22 Cal.Jur. 719 and cases cited; see also *Merkle* v. *Merkle,* 85 Cal.App. 87, 107-108 [258 P. 969])." (*Mills* v. *Schulba, supra,* 95 Cal. App.2d at p. 561.)  ■  Ordinarily where the application of the statute of limitations might be an issue, it is not enough in an action based on mistake merely to allege failure to discover the mistake earlier, but the reasons for such failure and the circumstances of the discovery must be given. (See *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 486 [45 P. 809] ; *People* v. *San Joaquin etc. Assn.,* 151 Cal. 797 [91 P. 740] ; *Shapiro* v. *Equitable Life Assur. Soc.,* 76 Cal.App.2d 75, 88 [172 P.2d 725].)  ■  But it has likewise been held that the failure to so allege can be raised only by a special demurrer or a general demurrer which specifies the applicable statute of limitations. Thus in *Graham* v. *Los Angeles First N. T. & S. Bank,* 3 Cal.2d 37 [43 P.2d 543], a general demurrer to the third amended complaint was sustained without leave to amend. Upon appeal from the judgment rendered thereon the court stated that the complaint, as here, merely gave the date of the discovery of the fraud charged, but did not set forth the circumstances of the discovery. The court said (pp. 43-44) : ". . . respondent relies upon the rule set out in *Consolidated R. & P. Co.* v. *Scarborough,* 216 Cal. 698 [16 P.2d 698], and *Lady Washington C. Co.* v. *Wood,* 113 Cal. 482, 486 [45 P. 809]. In both these cases demurrers specifically setting up the statute of limitations had been interposed. It may be conceded that these cases are definite authority for the rule that if the defense of the statute of limitations is properly presented, the complaint is vulnerable unless it shows facts and circumstances surrounding the discovery of the fraud from which the court may decide that the facts and circumstances furnish justification for a suspension of the statute until the discovery of the facts constituting fraud. In the instant case, however, the defense of the statute of limitations was not interposed. The demurrer was a general demurrer which did not specify the statute of limitations. Although the defense may be raised by a general demurrer, such demurrer must specify that the ground relied on is the bar of the statute of limitations."

Other cases holding that the failure to allege the reason for the delay in discovering the alleged fraud or mistake and the

circumstances of the discovery, can be attacked only by special or general demurrers specifying the *applicable* statute of limitations, are *Gillis* v. *Pan American Western Pet. Co.,* 3 Cal.2d 249 [44 P.2d 311] ; *Turner* v. *Milstein,* 103 Cal.App.2d 651 [230 P.2d 25] ; *Bank of America* v. *Ames,* 18 Cal. App.2d 311 [63 P.2d 1208]. A rather unique decision on the subject appears in *Richardson* v. *Michel,* 45 Cal.App.2d 188 [113 P.2d 916]. There the court stated that in a fraud action it is necessary to allege the times and circumstances under which the fraud was discovered, that in that particular fraud action there were no such allegations, that appellants in their answer had alleged that the cause of action was barred by specified proper sections of the statute of limitations, that the appellants had objected to evidence on this ground and had argued to the trial court the applicability of the statute. It appeared that the trial court had found that the cause of action was not barred. The reviewing court stated that neither side had offered any evidence on this subject and there was no support in the evidence for that finding. It then, in spite of the lack of allegations in the complaint, remanded the case for retrial on the sole issue as to the statute of limitations.

In our case, as we have stated, the defendant did not demur. He did move for a dismissal and judgment on the pleadings and from time to time objected to the introduction of evidence on the ground that the complaint did not state a cause of action and was barred by the statute. This was not a sufficient pleading of the statute of limitations. (*Everts* v. *Blaschko, supra,* 17 Cal.App.2d 188, 190.) "'. . . the party relying on it [the statute of limitations] must affirmatively set it up in his pleading either by demurrer or answer, or it will be deemed to have been waived." (*Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740, 744 [47 P.2d 273].) "The complaint need not show that the action is not barred [citations], except in the case of an action for fraud, and even then a sufficient cause of action is stated unless the statute is pleaded. [Citations.]" (*Bank of America* v. *Ames, supra,* 18 Cal.App.2d at p. 315.)

3. *Statutes of Limitation.*

Defendant contends that the cause of action is barred by section 338, subdivision 4, Code of Civil Procedure, which requires actions for relief on the ground of fraud or mistake to be brought within three years of the discovery of the

mistake. He also relies on section 353, Code of Civil Procedure, which extends the time for the bringing of an action where the holder of a cause of action dies before the expiration of the time limited for the commencement thereof. Such extension is limited to six months from the date of death. While here the complaint was filed over six years after the execution and recording of the deed and more than three years after the death of Berendsen, it was filed within four months of the discovery of the mistake by plaintiff executor. A reasonable inference from the evidence in this case is that neither of the principals to the deed discovered the error in their respective lifetimes, nor did either of the personal representatives of their respective estates until shortly before the suit was filed. It is apparent that both the principals and the representatives believed that the property was owned by Berendsen and McIver as tenants in common. They treated it as such. ■ While there is no definite evidence of why the principals did not discover the error in their lifetimes, the fact that McIver, to whom the deed was delivered, by whom it was recorded, and who kept it in his safe deposit box, did not discover it, raises a reasonable inference that whatever prevented him from discovering it likewise prevented his partner from discovering it. It is obvious that buying the property as partners they both considered it partnership property and hence neither one of them would be particularly concerned about checking up on the form of the deed.

■ Defendant contends that pursuant to section 1213, Civil Code, plaintiff had constructive notice of the contents of the deed because it was recorded. Section 1213 does not apply to a grantee of the particular deed recorded. The section provides for constructive notice to "subsequent purchasers and mortgagees" only. ■ As said in 22 California Jurisprudence, page 724, § 12, "The mere recording of an instrument is not notice of a mistake therein: for otherwise, as has been observed, no contract could be reformed after the lapse of three years from that date." (See also *Lillis* v. *Silver Creek etc. Water Co.,* 21 Cal.App. 234 [131 P. 344] ; *Brown* v. *Oxtoby,* 45 Cal.App.2d 702 [114 P.2d 622].) *Mulcahy* v. *Buckley,* 100 Cal. 484 [35 P. 144] ; *Brooks* v. *Nelson,* 95 Cal.App. 144 [272 P. 610], and *Goodell* v. *Blumer,* 41 Wis. 436, 444, are not in point. They merely hold that in a court pleading a party may not deny on information and belief the fact that a certain document is recorded; that it

is the duty of such party to check the records before answering to see if it is recorded.

Defendant would also apply section 19, Civil Code, which provides for constructive notice to a person "who has actual notice of circumstances sufficient to put a prudent man upon inquiry." Defendant points to no evidence in the case of actual notice of such circumstances.

Defendant contends that the executor of the Berendsen estate had constructive notice of the contents of the deed because of its being recorded. The executor is not a "subsequent purchaser or mortgagee" under the section. Nor was the attorney who represented the executor of the Berendsen estate at the same time he was the attorney for McIver personally and who initially was the attorney for the executor of the latter's estate, included in that category. This attorney testified that he discovered that the deed had been drawn in joint tenancy probably two or three months after he had filed the petition for probate in the McIver estate. This petition was filed in late November or early December of 1950, and thus the time of the discovery by the attorney would be some time in the early part of 1951. Assuming, as claimed by defendant, that his knowledge would be implied to the executor of the Berendsen estate as he was then the attorney for both estates, and that the statute of limitations would then start to run, the action would not be barred as it was filed in October, 1951.

The evidence shows that from September 7, 1949, through May 12, 1950, there were negotiations between the executor of the Berendsen estate and McIver in which McIver was endeavoring to buy the half interest of the Berendsen estate which both believed that estate owned. This fact alone would lull the executor into believing that the estate had such interest. If, as claimed by defendant, the rebuttable presumption stated in section 1963, subdivision 15, Code of Civil Procedure, that official duty has been performed, applies, such evidence was sufficient to overcome it as well as any claim of laches on the part of plaintiff in not examining the record sooner.

4. *Oral Testimony.*

In support of his contention that oral testimony cannot be admitted to show the mistake, defendant cites no cases so holding. He refers to cases like *Hebert* v. *Miller,* 94 Cal.App.2d 211 [210 P.2d 251], and *Security-First Nat.*

*Bank* v. *Leatart,* 75 Cal.App.2d 211, 215 [170 P.2d 687], which did not deal with mistakes but with the attempt of a grantee to limit or qualify the estate granted. It has uniformly been held that oral evidence is admissible to show that a writing, through fraud or mistake, does not express the intention of the parties. (See 22 Cal.Jur. p. 741, § 23; *Mills* v. *Schulba, supra,* 95 Cal.App.2d 550.)

5. *Competency of Administrator.*

Defendant contends that under section 1880, subdivision 3, Code of Civil Procedure, plaintiff was incompetent to testify. That section prohibits parties to an action against an executor upon *a claim or demand* against the estate of a deceased person from testifying as to any matter or fact occurring before the death of such deceased person. This was not an action on a *claim or demand* against the McIver estate. It was the type of action referred to in the following statement from *Alvarez* v. *Ritter,* 67 Cal.App.2d 574, 579-580 [155 P.2d 83] : "Moreover, the disqualification of witnesses under section 1880, *supra,* applies only to parties or assignors of parties in an action or proceeding *upon a claim against the estate of a deceased person.* It has been uniformly held in California that neither a party nor an assignor of a party to an action to establish a resulting trust, to quiet title to property or to require an accounting of a partnership, is disqualified to testify to facts occurring before the death of the decedent, since such actions are not based upon claims or demands against the estate. (*Myers* v. *Reinstein,* 67 Cal. 89 [7 P. 192] ; 11A Cal.Jur. 890, § 632; 12 So.Cal.L.Rev. 10.) In the text of 11A Cal.Jur. at page 890, it is said in that regard:

" 'Claims to property adverse to the estate are not within the statute, because, if the property belongs to the claimant, the recovery in the action does not tend to diminish the estate to which the judgment might decide it did not belong.' " (See also *Calmon* v. *Sarraille,* 142 Cal. 638, 642 [76 P. 486].)

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 26, 1954.